UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ANA L. DIONICIO and ALEJANDRO
M. WESAW, individually, and as a
representative of a Class of Participants
and Beneficiaries of the U.S. Bank 401(k)
Savings Plan,

        Plaintiffs,                              Case No. 23-cv-00026-PJS-JFD

    v.

U.S. BANCORP, et al.,

        Defendants.

---

PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................... ii

INTRODUCTION ............................................................................................... 1

LEGAL OVERVIEW............................................................................................ 5

STANDARD OF REVIEW .................................................................................... 6

ARGUMENT...................................................................................................... 7

I.    PLAINTIFFS HAVE PLAUSIBLY PLED A BREACH OF DUTY OF
      PRUDENCE CLAIM UNDER ERISA BASED ON EXCESSIVE PLAN RKA
      AND MANAGED ACCOUNT FEES............................................................... 7

      A.    The Commoditization and Fungibility of Recordkeeping Services ................. 11

      B.    The Commoditization and Fungibility of Managed Account Services............. 13

II.   DEFENDANTS' COUNTER-ARGUMENTS ARE ERRONEOUS AND
      UNPERSUASIVE.......................................................................................... 16

III.  PLAINTIFFS HAVE STATED CLAIMS FOR BREACH OF THE DUTY TO
      MONITOR .................................................................................................. 23

CONCLUSION ................................................................................................... 23

CERTIFICATE OF SERVICE................................................................................. 25

## TABLE OF AUTHORITIES

### CASES

*Albert v. Oshkosh Corp.,*
  47 F.4th 570 (7th Cir. 2022) ................................................................ passim

*Boggs v. Boggs,*
  520 U.S. 833 (1997)................................................................................. 5

*Braden v. Wal-Mart Stores, Inc.,*
  588 F.3d 585 (8th Cir. 2009)................................................................ passim

*Coyer v. Univar Solutions USA Inc.,*
  2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) ....................................... 12, 19

*Davis v. Washington Univ. in St. Louis,*
  960 F.3d 478 (8th Cir. 2020)............................................................... passim

*Divane v. Northwestern Univ.,*
  953 F. 980 (7th Cir. 2020) ...................................................................... 15

*Donovan v. Bierwirth,*
  680 F.2d 263 (2d Cir. 1982) ..................................................................... 5

*Forman v. Trihealth, Inc.,*
  40 F. 4th 443 (6th Cir. 2022) .................................................................. 18

*Fritton v. Taylor Corp.,*
  2022 WL 17584416 (D. Minn. Dec. 12, 2022) .................................... 17, 20

*Glick v. ThedaCare,*
  2022 WL 16927749 (E.D. Wis. Oct. 27, 2022)......................................... 14

*Glick v. ThedaCare, Inc.,*
  2022 WL 16924188 (E.D. Wis. Nov. 14, 2022) ....................................... 19

*Guyes v. Nestle USA,*
  2023 WL 22629 (E.D. Wis. Jan. 3, 2023) ................................................ 19

*Hughes v. Northwestern Univ.,*
  142 S. Ct. 737 (2022)........................................................................ passim

*Hughes v. Northwestern Univ.,*
  63 F.4th 615 (7th Cir. 2023) ................................................................ passim

*In re Atlas Van Lines, Inc.*,
   209 F.3d 1064 (8th Cir. 2000) ............................................................................. 1

*In re Xerox Corp. ERISA Litig.*,
   483 F. Supp. 2d 206 (D. Conn. 2007) ................................................................ 23

*Krutchen v. Ricoh USA, Inc.*,
   2023 WL 3026705 (E.D. Pa. Apr. 20, 2023) ..................................................... 18

*L.L. Nelson Enters., Inc. v. County of St. Louis*,
   673 F.3d 799 (8th Cir. 2012) ................................................................................ 6

*Laabs v. Faith Techs, Inc.*,
   2022 WL 17418358 (E.D. Wis. Nov. 9, 2022) ................................................... 14

*Laabs v. Faith Techs., Inc.*,
   2022 WL 17417583 (E.D. Wis. Dec. 5, 2022) ................................................... 19

*Larson v. Allina Health Sys.*,
   350 F. Supp. 3d 780 (D. Minn. 2018) ............................................................... 23

*Lucero v. Credit Union Ret. Plan Ass'n*,
   2023 WL 2424787 (W.D. Wis. Mar. 9, 2023) ................................................... 18

*Matousek v. Mid-Am. Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ..................................................................... passim

*Mazza v. Pactiv Evergreen Services, Inc., et al.*,
   2023 WL 3558156 (N.D. Ill. May 18, 2023) ............................................... 4, 5, 18

*Meiners v. Wells Fargo & Company*,
   898 F.3d 820 (8th Cir. 2018) .................................................................... 7, 9, 11

*Nohara v. Prevea Clinic, Inc.*,
   Case No. 20-cv-1079, ECF No. 73,
   Magistrate's Report and Recommendation (Oct. 27, 2022) .................................. 21

*Peck v. Munson Healthcare*,
   2022 WL 17260807 (W.D. Mich. Nov. 9, 2022) ............................................... 21

*Probst v. Eli Lilly & Co.*,
   2023 WL 1782611 (S.D. Ind. Feb. 3, 2023) ...................................................... 18

*Riley v. Olin Corp.*,
   2023 WL 371872 (E.D. Mo. Jan. 24, 2023) ...................................................... 18

*Schave v. CentraCare Health Sys.*,
  2023 WL 1071606 (D. Minn. Jan. 27, 2023) ................................................................. 7

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983) ............................................................................................................. 5

*Sigetich v. Kroger Co.*,
  2023 WL 2431667 (S.D. Ohio Mar. 9, 2023) ............................................................. 18

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ....................................................................................... 18

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ......................................................................................... 7

*Stodghill v. Wellston Sch. Dist.*,
  512 F.3d 472 (8th Cir. 2008) ........................................................................................... 7

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) ........................................................................................... 7

*Sweda v. Univ. of Pa.*,
  923 F.3d 320 (3d Cir. 2019) ..................................................................................... 1, 10

*Tibble v. Edison Int'l*,
  843 F.3d 1187 (9th Cir. 2016) ......................................................................................... 8

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015) .............................................................................................. 8, 13, 22

*Tolomeo et al. v. R.R. Donnelley & Sons, Inc. et al.*,
  2023 WL 3455301 (N.D. Ill. May 15, 2023) ................................................. 1, 4, 12, 18

*Tussey v. ABB, Inc.*,
  746 F.3d 327 (8th Cir. 2014) ......................................................................................... 10

*Wildman v. Am. Century Servs., LLC*,
  237 F. Supp. 3d 902 (W.D. Mo. 2017) ........................................................................ 23

<u>STATUTES</u>

ERISA, 29 U.S.C. § 1001 et seq. ........................................................................................ 5
ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ................................................... 2, 5, 9
ERISA § 404(a)(5), 29 U.S.C. § 1104(a)(5) ............................................................. 17, 20

iv

OTHER AUTHORITIES

*The United States Government Accountability Office ("GAO"), 401(K) PLANS: Improvements Can Be Made to Better Protect Participants in Managed Accounts,*
(June 2014), available at https://www.gao.gov/as-sets/670/664391.pdf ......................... 13

RULES

Federal Rule of Civil Procedure 8(a)(2) ........................................................................ 6
Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 6

TREATISES

RESTATEMENT (SECOND) OF TRUSTS, § 174, cmt. b (1959) ....................................... 6

## INTRODUCTION

As a number of district courts have recently recognized, the legal landscape regarding the pleading of ERISA excessive fee litigation has changed dramatically since the Seventh Circuit's March 2023 decision in *Hughes v. Northwestern Univ.*, 63 F.4th 615 (7th Cir. 2023) ("*Hughes II*"). *See Tolomeo et al. v. R.R. Donnelley & Sons, Inc. et al.*, 2023 WL 3455301, at *3 (N.D. Ill. May 15, 2023) ("Defendants posit that . . . *Hughes II* did not announce a 'new pleading standard.' The Court disagrees because *Hughes II* itself described its 'newly formulated pleading standard.'") (*citing Hughes II*,   63 F.4th at 631.) The reason that this Seventh Circuit development in *Hughes II* is significant for this Court is because *Hughes II* drew much of its logic from the Eighth Circuit's decision in *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020). *See Hughes II*, 63 F.4th at 633 ("We are not alone in our conclusion on this type of claim. Two circuits have ruled against dismissing similar claims that alleged a failure to lower recordkeeping expenses.") (*citing Davis*, 960 F.3d at 482-483; *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328, 330-31 (3d Cir. 2019).)

Plaintiffs allege here in the First Amended Complaint ("FAC")[1] that Defendants have breached the fiduciary duty of prudence under ERISA by allowing the U.S. Bank 401(k) Savings Plan (the "Plan") to pay "excessive bundled recordkeeping and administrative ('RKA') fees, . . . excessive managed account service fees, and . . . for fail[ing] to monitor fiduciaries with regard

---

[1] Defendants' brief is littered with arguments that Plaintiffs has pled inconsistent positions because they have forwarded alternative theories in their Amended Complaint as compared to their initial Complaint. See, e.g., Defendants' Memorandum of Law, ECF No. 34, at 1-2. Defendants' arguments in this regard are wholly improper and unpersuasive because "[i]t is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect." In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000). Plaintiffs have conceded nothing by filing an amended complaint, except that additional facts became available in the interim making its claims against Defendants even stronger.

1

to Plan Bundled RKA and managed account service fees." See Plaintiffs' First Amended Complaint ("FAC"), ECF No. 28, ¶ 5. Although Defendants' Memorandum of Law attempts to sow doubt concerning the FAC's essential legal and factual allegations and seeks to question whether *Hughes II* provides persuasive guidance to this Court, see ECF No. 34, at 13 n.3 ("While Plaintiffs may invoke the Seventh Circuit's recent decision in [Hughes II], it does not disturb these holdings."), *Davis* and *Hughes II* do in fact "disturb previous holdings" and lead to the inexorable conclusion that the FAC states plausible claims under relevant United States Supreme Court and Eighth Circuit precedent.

Under *Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022), the United States Supreme Court stated that the express pleading standard for ERISA duty of prudence claims, like this one, is whether plaintiff has "plausibly alleged a violation of the duty of prudence as articulated in *Tibble [v. Edison Int'l*, 575 U.S. 523 (2015))], applying the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Hughes*, 142 S. Ct. at 742. *Hughes II*, on remand from the Supreme Court, sets out the "correct pleading standard for a breach of duty of prudence of ERISA." *Id.*, at 626. Based on the plausibility test of *Iqbal* and *Twombly*, a plaintiff "must have alleged enough facts to show that a prudent fiduciary would have taken steps to reduce fees and remove some imprudent investments," *id.*, at 628, and "must plausibly allege fiduciary decisions outside a range of reasonableness." *Id.*, at 630. This standard is "context-specific," *id.*, at 632, and "[h]ow wide that range of reasonableness is will depend on 'the circumstances . . . prevailing' at the time the fiduciary acts." *Id.*, at 630 (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); 29 U.S.C. § 1104(a)(1)(B)). Third, and finally, "these cases [do not] say a plaintiff must conclusively rule out every possible alternative explanation for a defendant's conduct, no

2

matter how implausible." *Id.*, at 629 (emphasis in original). In all, "[w]here alternative inferences are in equipoise—that is, where they are all reasonable based on the facts—the plaintiff is to prevail on a motion to dismiss." *Id.*

This standard is consistent with both *Matousek v. Mid-Am. Energy Co.*, 51 F.4th 274 (8th Cir. 2022) and *Davis*, 960 F.3d 478, the Eighth Circuit's two most recent cases on pleading standards for ERISA fiduciary breach of prudence claims. Citing to *Davis* and echoing *Hughes II*, *Matousek* observes that a "plaintiff typically clears the pleading bar by alleging enough facts to 'infer ... that the process was flawed." *Id.* (*citing Davis*, 960 F.3d at 482–83). Critically, "[t]he key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison—a meaningful benchmark'—not just alleging that 'costs are too high, or returns are too low.'" *Id.* at 484. More specifically, the way to plausibly plead a claim of this type is to identify similar plans offering the same services for less." *Matousek*, 51 F.4th at 279 (*citing Albert v. Oshkosh Corp.*, 47 F.4th 570, 579–80 (7th Cir. 2022).) Unfortunately, by solely relying on industry averages for comparison in *Matousek*, the plaintiffs there failed to plead a plausible claim because the key to stating a plausible excessive-fees claim is to make a like-for-like comparison. *See Matousek*, 51 F. 4th at 279-280 ("Rather than point to the fees paid by other specific, comparably sized plans, the plaintiffs rely on industry-wide averages.".)

Here, on the other hand, Plaintiffs have provided a "like-for-like" comparison by providing the necessary meaningful benchmarks in the form of seven specific, comparably sized plans for recordkeeping (ECF No. 28, ¶ 99) and six specific, comparably sized plans for managed account services (ECF No. 28, ¶ 127). Just as important, Plaintiffs have alleged the commoditization and fungibility of recordkeeping and managed account services provided to mega plans like U.S. Bank's. ECF No. 28, ¶¶ 49, 51-52, 58, 101, 113, 126. These allegations

were missing from both *Matousek* and *Albert*, 47 F.4th 570, and that is why those complaints failed to state a claim. *See Matousek*, 51 F.4th at 280; *Hughes II*, 63 F.4th at 632 ("Unlike in *Albert*, plaintiffs here assert '[t]here are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to large defined contribution plans like the Plans.'".)

In short, because Plaintiffs have provided meaningful benchmarks in the form of specific, comparably-sized plans receiving commoditized recordkeeping and managed account services, they have created a plausible inference that the decision-making process itself was flawed, *see Davis*, 960 F.3d at 484–85, similar to the outcome in *Hughes II*, and unlike those outcomes in *Matousek* and *Albert*. Indeed, recent case law interpreting *Hughes II* has found materially identical factual allegations to the ones here may proceed to discovery. *See Mazza v. Pactiv Evergreen Services, Inc., et al.*, 2023 WL 3558156, at *3 (N.D. Ill. May 18, 2023) ("Mazza's amended complaint includes allegations that recordkeepers for mega retirement plans like Pactiv's all provide the same level and quality of services with insignificant variation in price, suggesting that the Plan's RKA fees were excessive compared to the services the Plan received based on comparisons to other plans using recordkeepers that provided comparable services for less. Following *Hughes*, these allegations suffice to allege a breach of the duty of prudence."); *Tolomeo*, 2023 WL 3455301, at *4 ("Defendants argue that the evolving case law requires dismissal of Plaintiffs' duty of prudence claim because the complaint fails to allege plausible facts that the alleged comparator plans received the same quality or level of services as the Plan . . . . This ignores the lesson of *Hughes II*. Plaintiffs allege the fungible nature of RK&A fees—that the Plan received a standard bundled RK&A services with 'nearly identical level and quality to other recordkeepers who service other mega plans.'").

In short, "[w]hile Defendants offer alternative explanations that warrant exploration during discovery, they are not so obvious that they require dismissal of Plaintiffs' claims at the pleading stage, particularly given Plaintiffs' allegations that RKA [and managed account] services are commoditized and that recordkeepers quote fees on a per participant basis without regard for individual differences in the services requested." *Mazza*, 2023 WL 3558156, at *3 (citing *Hughes II*, 63 F.4th at 629.) The Court should therefore dismiss Defendants' motion to dismiss in its entirety.

## LEGAL OVERVIEW

The Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., ("ERISA") "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). "The principal object of the statute is to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997).

Under ERISA, plan fiduciaries must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). This fiduciary duty of prudence governs the conduct of Defendants and imposes on them as plan fiduciaries "the highest duty known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n. 8 (2d Cir. 1982).

This fiduciary duty of prudence includes "a continuing duty to monitor trust investments and remove imprudent ones," as informed by the common law of trusts. *Tibble*, 575 U.S. at 528–29. Courts evaluate prudence based on "the circumstances as they reasonably

appear to him at the time when he does the act and not at some subsequent time when his conduct is called in question." RESTATEMENT (SECOND) OF TRUSTS, § 174, cmt. b (1959.) Such an inquiry is necessarily context specific, *Dudenhoeffer*, 573 U.S. at 425, and courts must give "due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742.

Under this pleading standard, Plaintiffs' Amended Complaint states plausible claims for relief based on copious, *specific*, detailed, and non-conclusory *factual* allegations about the unreasonableness of the RKA and managed account fees during the Class Period. On the other hand, Defendants' memorandum of law glosses over many of the pertinent facts, creates factual disputes that cannot be resolved at the pleading stage, and directs the Court's attention to inapplicable legal authorities.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiffs have failed to state a claim upon which relief can be granted. Under Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff need not prove her case at the pleading stage, nor do the pleadings require detailed factual allegations to survive a motion to dismiss. *Twombly*, 550 U.S. at 555 (2007); *L.L. Nelson Enters., Inc. v. County of St. Louis*, 673 F.3d 799, 805 (8th Cir. 2012)

(observing that "specific facts are not necessary" and pleadings "need only give the [opposing party] fair notice of what the claim is and the grounds upon which it rests.".) A district court accepts as true all of the plaintiff's factual allegations and views them in the light most favorable to the plaintiff. *See Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

"ERISA plaintiffs claiming a breach of fiduciary duty have a challenging pleading burden because of their different levels of knowledge regarding what investment choices a plan fiduciary made as compared to how a plan fiduciary made those choices." *See Meiners v. Wells Fargo & Company*, 898 F.3d 820, 822 (8th Cir. 2018). Typically, ERISA plaintiffs "lack extensive information regarding the fiduciary's methods and actual knowledge because those details tend to be in the sole possession of that fiduciary." *See Schave v. CentraCare Health Sys.*, 2023 WL 1071606, at *3–4 (D. Minn. Jan. 27, 2023). It is not the Court's role to decide between competing, plausible explanations for Defendants' conduct. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Where alternative inferences are in equipoise—that is, where they are all reasonable based on the facts—the plaintiff is to prevail on a motion to dismiss." *See Hughes II*, 63 F.4th at 629.

## **ARGUMENT**

## I.  **PLAINTIFFS HAVE PLAUSIBLY PLED A BREACH OF DUTY OF PRUDENCE CLAIM UNDER ERISA BASED ON EXCESSIVE PLAN RKA AND MANAGED ACCOUNT FEES**

The United States Supreme Court explained in *Tibble v. Edison Int'l*, 575 U.S. 523, that "'a fiduciary normally has a continuing duty of some kind to monitor investments and remove

imprudent ones.'" *Hughes*, 142 S. Ct. at 741 (*quoting Tibble*, 575 U.S. at 530). Even in a defined-contribution plan where participants choose their investments, plan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options." *Id. at 742* (citing *Tibble*, 575 U.S. at 529-30.) The Supreme Court in *Hughes* concluded by stating that "[i]f the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes*, 142 S. Ct. at 742.

To state a claim for breach of fiduciary duty under ERISA, "a plaintiff must make a *prima facie* showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009.) Defendants do not contest, for pleading purposes, their status as Plan fiduciaries or that they caused a loss to the Plan. Rather, Defendants only challenge whether Plaintiffs have adequately pled a breach of fiduciary duty.

When evaluating whether Defendants breached their fiduciary duties by failing to act prudently, courts "focus on the process by which [the fiduciary] makes its decisions rather than the results of those decisions." *Id.* The fiduciary duty of prudence includes "a continuing duty to monitor plan expenses and 'incur only costs that are reasonable in amount and appropriate' with respect to the services received." *Hughes II*, 63 F.4th at 631 (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016)).

A plaintiff can clear the pleading bar by alleging enough facts to "infer ... that the process was flawed." *See Matousek*, 51 F.4th at 278 (*quoting Davis*, 960 F.3d at 482–83.). "The key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison—a meaningful benchmark'—not just alleging that "costs are too high,

or returns are too low." *Id. Hughes II* instructs that "[t]o plead a breach of the duty of prudence under ERISA, a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness. How wide that range of reasonableness is will depend on the circumstances ... prevailing at the time the fiduciary acts. The discretion accorded to an ERISA fiduciary will necessarily be context specific." *Id.* at 630. Even more significantly, "[w]here alternative inferences are in equipoise—that is, where they are all reasonable based on the facts—the plaintiff is to prevail on a motion to dismiss. This is because, at the pleadings stage, [courts] must accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. A court's role in evaluating pleadings is to decide whether the plaintiff's allegations are plausible—not which side's version is more probable." *Id.* at 629–30.

In *Matousek*, the plaintiffs alleged "that the plan's fiduciaries . . . violated their duty of prudence, which is about how they must act." 51 F.4th at 278 (*citing Braden*, 588 F.3d at 595.) Thus, if defendants "failed to use the same 'care, skill, prudence, and diligence under the circumstances' as 'a prudent man,' then they have breached their duty." *Id.* (citing 29 U.S.C. § 1104(a)(1)(B)). As in all these cases, "[t]he process is what ultimately matters, not the results." *See id.* at 278 (*citing Braden*, 588 F.3d at 595.) That being said, an ERISA breach of fiduciary complaint does "not have to go further and 'directly address[ ] the [actual] process by which the [p]lan was managed.'" *Braden*, 588 F.3d at 596. "[C]ircumstantial allegations about [the fiduciary's] methods" can be enough. *See Meiners*, 898 F.3d at 822.

Citing to *Davis* and echoing *Hughes II*, *Matousek* observes that a "plaintiff typically clears the pleading bar by alleging enough facts to 'infer ... that the process was flawed.'" *Matousek*, 51 F.4th at 278 (citing *Davis*, 960 F.3d at 482–83). Critically, "[t]he key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison—a

meaningful benchmark'—not just alleging that 'costs are too high, or returns are too low.'" *Davis*, 960 F.3d at 484. More specifically, "[i]n the absence of 'significant allegations of wrongdoing,' *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014), the way to plausibly plead a claim of this type is to identify similar plans offering the same services for less." *Matousek*, 51 F.4th at 279 (*citing* Albert, 47 F.4th at 579–80; *Sweda*, 923 F.3d at 330). Unfortunately, by solely relying on industry averages for comparison in *Matousek*, the plaintiffs there failed to plead a plausible claim because the key to stating a plausible excessive-fees claim is to make a like-for-like comparison. *See Matousek*, 51 F. 4th at 279-280 ("Rather than point to the fees paid by other specific, comparably sized plans, the plaintiffs rely on industry-wide averages.".)

    *Davis*, for its part, dealt with retirement-plan participants suing Washington University for breach of its fiduciary duties under ERISA, including for allowing recordkeeping expenses to get out of control. *See Davis*, 960 F.3d at 482.  With regard to plan fees that were too high, *Davis* concluded that WashU should have negotiated a better deal and that plaintiffs' excessive fee claims cleared the pleading hurdle. *See id.* at 483. More specifically, the Eighth Circuit held that where the complaint alleged that the marketplace for retirement plans is competitive and given the large size of the WashU Plan, two inferences could be made: "The first is that it failed to gain access to [less expenses fees] because, as the complaint alleges, it did not negotiate aggressively enough with [the recordkeeper]. The second is that it was asleep at the wheel: it failed to pay close enough attention to available lower-cost alternatives. Either way, a "failure of effort [or] competence" is enough to state a claim for breach of the duty of prudence." *Id.* (*quoting Braden*, 588 F.3d at 596).

    Materially similar allegations exist here. Plaintiffs have alleged the highly competitive nature of the marketplace for retirement plan services, ECF No. 28, ¶¶ 52 (recordkeeping), 71

(managed account services), and the mega size of the U.S. Bank 401(k) Plan. *Id.*, ¶¶ 40-41. Plaintiffs allege that given its substantial bargaining power, U.S. Bank should have more aggressively negotiated lower recordkeeping and managed account fees, which were available in the marketplace if they have had completed an effective solicitation of bids for these services. *Id.*, ¶¶ 6-7, 40, 159, 169. Finally, Plaintiffs allege that Defendants clearly were asleep at the wheel since lower-cost alternatives were provided to comparably-sized plan receiving material identical, fungible recordkeeping and managed account services. ECF No. 28, ¶¶ 49, 51-52, 58, 101, 113, 126. Thus, as in *Davis*, Plaintiffs have alleged a "failure of effort [or] competence," which is enough to state a claim for breach of the duty of prudence." *Id.* (*quoting Braden*, 588 F.3d at 596).

### A.      The Commoditization and Fungibility of Recordkeeping Services

The idea that lower-cost alternatives providing similar services were available to the Plan is at the heart of Plaintiffs' "like-for-like" comparisons. More specifically, and consistent with *Matousek*, *Davis*, and *Meiners*, Plaintiffs have provided the necessary meaningful benchmarks in the form of seven specific, comparably sized plans for recordkeeping (ECF No. 28, ¶ 99) and six specific, comparably sized plans for managed account services (ECF No. 28, ¶ 127). Just as important, Plaintiffs have alleged the commoditization and fungibility of recordkeeping and managed account services provided to mega plans like U.S. Bank's. ECF No. 28, ¶¶ 49, 51-52, 58, 101, 113, 126. These allegations were missing from both *Matousek* and *Albert*, 47 F.4th 570, which is why those complaints failed to state a claim. *See Matousek*, 51 F.4th at 280; *Hughes II*, 63 F.4th at 632 ("Unlike in *Albert*, plaintiffs here assert '[t]here are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to large defined contribution plans like the Plans.'".)

11

Nevertheless, Defendants argue that case law requires dismissal of Plaintiffs' duty of prudence claim because the FAC fails to allege plausible facts that the alleged comparator plans received the same quality or level of services as the Plan. ECF No. 34, at 7 ("Plaintiffs offer no factual allegations regarding the recordkeeping services provided to the Plan or Plaintiffs' [sic] five comparator plans.".) As other courts have pointed out, however, this argument "ignores the lesson of *Hughes II*." *See Tolomeo*, 2023 WL 3455301, at *4. Here, Plaintiffs allege the fungible nature of RK&A fees—that "[t]his highly competitive RKA market is filled with equally capable recordkeepers who can provide comparable services for less." ECF No. 28, ¶ 52. Plaintiffs state that "Plan provided participants all the commoditized Bundled RKA services provided to all other mega 401(k) plan participant. The quality or type of RKA services provided by competitor recordkeepers are comparable to that provided by Alight." *Id.*, ¶ 49. Allegations that recordkeeping services for mega 401(k) plans are fungible, and the same services could have been provided by other comparator recordkeepers were missing in *Matousek* and *Albert*. *See Matousek*, 51 F.4th at 280; *Tolomeo*, 2023 WL 3455301, at *4 (*citing Albert*, 47 F.4th 570.) Further, and significantly, Plaintiffs rely on these benchmarks to suggest an imprudent decision-making process. *See Hughes II*, 63 F.4th at 633 ("[A] fiduciary who fails to monitor the reasonableness of plan fees and fails to take action to mitigate excessive fees may violate the duty of prudence.".)

In short, Plaintiffs here, like the *Hughes II* plaintiffs and unlike the plaintiffs in *Matousek* and *Albert*, "maintain that the market is competitive with equally capable recordkeepers who can provide comparable services for less." *Id. Accord Coyer v. Univar Solutions USA Inc.*, 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022) (allegation that the plan paid higher RK&A fees than comparable plans with "virtually the same package of services" was sufficient to state a

claim.)

## B.    The Commoditization and Fungibility of Managed Account Services

Plaintiffs have provided similar evidence of fungibility and commoditization for managed account services. In this vein, Plaintiffs allege that "[m]anaged account providers 'generally offer the same basic service—initial and ongoing investment management of a 401(k)-plan participant's account based on generally accepted industry methods.' The United States Government Accountability Office ("GAO"), *401(K) PLANS: Improvements Can Be Made to Better Protect Participants in Managed Accounts*, at 14 (June 2014), *available at* https://www.gao.gov/as-sets/670/664391.pdf, ECF No. 28, ¶ 71, that "[i]n practice, little to no material customization is provided to the vast majority of plan participants which results in no material value to most participants relative to the fees paid," *id.*, ¶73, and that "[t]he April 28, 2022 U.S. Bank 401(k) Savings Plan Annual Fee Disclosure Notice confirms that AFA provided the materially identical level and quality of services as all other managed account service providers of mega 401(k) plans when it states that '[t]he Plan has selected Alight Financial Advisors (AFA), a federally registered independent advisor, to provide fiduciary investment services to Plan participants. AFA offers an online advice tool that can help you fine-tune your investment strategy.'" *Id.*, ¶ 122.[2]

Indeed, and as alleged, other managed service providers like Transamerica, Fidelity, and Empower, provide materially identical managed account services to the plans they service.

---

[2] It is unclear why the voluntary nature of the managed account service should permit Defendants to overcharge for it, as Defendants contend. ECF No. 34, at 25. In any event, like all other Plan services or investment, "plan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options." *Hughes*, 142 S. Ct. at 742 (*citing Tibble*, 575 U.S. at 529-30.)

*Id.*, ¶ 124 ("Similarly, Transamerica, another recordkeeper that provided managed account serviced to mega plans, provides a 'Managed Advice® service' which provides participants with an asset allocation mix of funds available within a plan, and rebalances and reallocates the account over time as participant's circum-stances change. Materially identical managed account services are also provided by Fidelity through Strategic Advisers, Inc. ('SAI'), and by Empower through Advised Assets Group ('AAG')."); *id.*, ¶ 129 ("All the comparator Plans provide the materially same managed account services in the form of asset allocation based on the risk tolerance of the investor, with little to no individual customization.").[3] Thus, just as with the recordkeeping allegations, Plaintiffs rely on these benchmarks to suggest an imprudent decision-making process with regard to managed account services for the Plan. *See Hughes II*, 63 F.4th at 633, and Plaintiffs here, "maintain that the market is competitive with equally capable [managed account service providers] who can provide comparable services for less." *Id.*[4]

Moreover, and as also alleged, because the recordkeepers and managed account service providers of the comparator plans were receiving materially similar services for less, this is not

---

[3] These allegations, which further establish the fungible nature of managed account services across providers and plans, were absent from the allegations in *Glick v. ThedaCare*, 2022 WL 16927749, at *4 (E.D. Wis. Oct. 27, 2022), and *Laabs v. Faith Techs, Inc.*, 2022 WL 17418358, at *4-*5 (E.D. Wis. Nov. 9, 2022), both of which largely relied upon the GAO Report.

[4] Attempting to manufacture issues with Plaintiffs' managed account service allegations, Defendants assert that Plaintiffs do not take into account the size of the comparator plans. ECF No. 34, at 28-30. Not so. Plaintiffs take into account the smaller size of a number of these plans, alleging that, "[b]ecause both the Verso and Trinity Health Plans are substantially smaller than the U.S. Bank Plan, Defendants should have been able to use its massive size and enormous leverage to solicit much lower managed account service fees from AFA or other managed account service providers or used target date funds instead." *Id.*, ¶¶ 130-131.

a case in which "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs," *Hughes*, 142 S. Ct. at 742, or where "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *id.*, because all recordkeepers and managed account service providers were providing a materially identical level or quality of services." *See* Secretary of Labor's Circuit Rule 54 Statement as *Amicus Curiae, Divane v. Northwestern University*, No. 18-2569 (Dkt. 49) (Mar. 31, 2022) (Plaintiff's recordkeeping and investment fee allegations are not about "reasonable tradeoffs" between differently managed investments.) In other words, where Plaintiff plausibly alleges that fiduciaries failed to offer the materially same RKA and managed account services at a materially lower and reasonable cost (not the "cheapest" or "average" cost) when they could have done so, "difficult tradeoffs" are not at issue. ECF No. 28, ¶ 113.[5]

In all, then, the alternative inferences concerning whether Defendants breached their duty of prudence because they failed to remove their recordkeeper, Alight, and their managed account service provider, AFA, who charged excessive fees for recordkeeping and managed account services are in equipoise. Indeed, Plaintiffs have alleged many of the same facts that the Eighth Circuit found sufficient in *Davis* and the Seventh Circuit found sufficient in *Hughes II*. In other words, as in *Hughes II*, the gist of what Plaintiff is alleging is that recordkeeping and managed account services are "commoditized ... recordkeepers [and managed account

---

[5] Defendants ignore Plaintiffs' commodification arguments with regard to managed account services, attempting to establish how different the comparator plans are in participant number and assets through their chart. ECF No. 34, at 29. Plaintiffs' point, with which Defendants are factually free to disagree, is that, at a certain size, such managed account services are materially the same. ECF No. 28, ¶¶ 124-133. *Matousek*, 51 F.4th at 280, is not to the contrary as Defendants' assert, ECF No. 34, at 30 n. 17, as that case did not involve allegations of fungibility and commodification like the Amended Complaint.

providers] primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for jumbo plans like the Plan," and "that recordkeeping services are fungible and that the market for them is highly competitive." *Hughes II*, 63 F.4th at 632.

Under Eighth Circuit precedent, Plaintiffs have cleared the pleading bar by alleging enough facts to "infer ... that the process was flawed." *See Matousek*, 51 F.4th at 278 (*quoting Davis*, 960 F.3d at 482–83.).  Plaintiffs have nudged the inference of imprudence from possible to plausible by providing 'a sound basis for comparison—a meaningful benchmark'—not just alleging that "costs are too high, or returns are too low." *Id.* Plaintiffs allege that Defendants clearly were asleep at the wheel since lower-cost alternatives were provided to comparably-sized plan receiving material identical, fungible recordkeeping and managed account services. ECF No. 28, ¶¶ 49, 51-52, 58, 101, 113, 126. Thus, as in *Davis*, Plaintiffs have alleged a "failure of effort [or] competence," which is enough to state a claim for breach of the duty of prudence." *See Matousek*, 51 F.4th at 278 (*quoting Braden*, 588 F.3d at 596.)

## II.   DEFENDANTS' COUNTER-ARGUMENTS ARE ERRONEOUS AND UNPERSUASIVE

Even though this is a straightforward case and the necessary meaningful benchmark allegations concerning the RKA and managed account services for both the Plan and comparator plans have been more than sufficiently pled, Defendants nevertheless repeatedly mischaracterize Plaintiffs' imprudence claims against U.S. Bank, setting up strawman arguments to knock down. Defendants seek unsuccessfully to undermine the obvious similarities between this case, on the one hand, and *Davis* and *Hughes II*, on the other.

**First.** Defendants maintain that *Matousek*, 51 F.4th 274, *Fritton v. Taylor Corp.*, 2022 WL

17584416 (D. Minn. Dec. 12, 2022), and *Albert*, 47 F.4th 570, continue to control the outcome here. ECF No. 34, at 2, 8, 14, 16, 20. *Matousek* and *Fritton* do not control this case because Plaintiffs have provided a "like-for-like" comparison by providing the necessary meaningful benchmarks in the form of seven specific, comparably sized plans for recordkeeping (ECF No. 28, ¶ 99) and six specific, comparably sized plans for managed account services (ECF No. 28, ¶ 127). Just as important, Plaintiffs have alleged the commoditization and fungibility of recordkeeping and managed account services provided to mega plans like U.S. Bank's. ECF No. 28, ¶¶ 49, 51-52, 58, 101, 113, 126. These allegations were missing from *Matousek* and *Fritton*. *See Matousek*, 51 F. 4th at 279-280 ("Rather than point to the fees paid by other specific, comparably sized plans, the plaintiffs rely on industry-wide averages."); *Fritton*, 2022 WL 17584416, at *7 (relying on industry average reports from NEPC.)

Moreover, with regard to *Fritton*, and unlike the Plaintiffs here, the plaintiffs in *Fritton* relied on Department of Labor ("DOL") 5500 Forms as opposed to ERISA Section 404(a)(5) participant fee disclosures for their recordkeeping service comparisons. *See Fritton*, 2022 WL 17584416, at *7 ("These comparisons are not like-for-like. As Defendants point out, Plaintiffs calculated the per-participant fee for each putative comparator plan by dividing only the direct compensation paid by the plan to its recordkeeper (evidently obtained from each plan's 2018 Form 5500) by the number of plan participants.".) Plaintiffs here derived their recordkeeping fee numbers from Bundled RKA numbers provided by the U.S. Bank Plan and by comparator plans in annual participant fee disclosures. Form 5500 issues simply do not exist in this case. *See* ECF No. 28, ¶¶ 47-52, 98-101.[6]

---

[6] Defendants remarkably assert that "Plaintiffs do not allege any facts about the specific services provided by Alight to the Plan or the services provided by each of the comparator's

For its part, the Seventh Circuit, clearly, and substantially, narrowed its holding in *Albert* by pointing out that the plaintiff in *Albert* did not plead that the fees were excessive relative to the recordkeeping services rendered. *Hughes II,* 63 F.4th at 632 ("*Albert* emphasized the lack of 'allegations as to the quality or type of recordkeeping services the comparator plans provided.'") (citing *Albert*, 47 F.4th at 579); *Tolomeo*, 2023 WL 3455301, at *4; *Mazza*, 2023 WL 3558156, at *3. Indeed, all of the cases on which Defendants rely similarly lack these allegations of the fees being excessive relative to the recordkeeping services rendered, *see, e.g., Forman v. TriHealth, Inc.*, 40 F. 4th 443 (6th Cir. 2022); *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022); *Krutchen v. Ricoh USA, Inc.*, 2023 WL 3026705 (E.D. Pa. Apr. 20, 2023); *Probst v. Eli Lilly & Co.*, 2023 WL 1782611 (S.D. Ind. Feb. 3, 2023); *Riley v. Olin Corp.*, 2023 WL 371872 (E.D. Mo. Jan. 24, 2023); and *Sigetich v. Kroger Co.*, 2023 WL 2431667 (S.D. Ohio Mar. 9, 2023), and thus do not apply to this case where there are numerous such allegations. *Accord Lucero v. Credit Union Ret. Plan Ass'n*, 2023 WL 2424787, at *3 (W.D. Wis. Mar. 9, 2023) ("[A]llegations [of commoditization of recordkeeping services] were missing in *Albert*, and other district courts in the Seventh Circuit have concluded since *Albert* that similar [commoditization] allegations are enough to infer that the services rendered by the cheaper plans are

_____

recordkeepers to their plans." ECF No. 34, at 17 & n5. It appears that Defendants are not only dismissing all the allegations about the fungibility of recordkeeping services provided to the Plan and comparator Plans, but also insisting that Plaintiffs citations to Plan documents do not count somehow because services outside of Bundled RKA services are also included. *See id.* at 17 n.5, 23. In any event, Plaintiffs do not admit that the Section 404(a)(5) disclosures are not a description of Alight's services. Merely because the Plan's administrative expenses include fees paid to other service providers does not diminish the fact that Plan participants are overpaying for RKA in the U.S. Bank Plan. Plaintiffs' FAC is filled with citations to the types of services provided by Alight and other service providers and why Plaintiffs focus on Bundled RKA for recordkeeping comparisons. ECF No. 28, ¶¶ 48-68. Those allegations make clear that accounting, trustee, and other fees are considered part of Bundled RKA. *Id.*, ¶ 47.

comparable.") (citing *Coyer*, 2022 WL 4534791, at *2.)[7]

**Second**. Defendants argue, to one degree or another, that there exist alternative explanations for not removing Alight as its recordkeeper and AFA as its managed account service provider during the Class Period. However, "an equally, if not more, plausible inference would be that [Defendants] neglected to keep its recordkeeping [and managed account service] fees . . . at a reasonable level." *Hughes II*, 63 F.4th at 633. Based on Plaintiffs' equally plausible inferences, Defendants' "alternative explanations are just not strong enough to justify dismissal of the recordkeeping claims on the pleadings." *See id.* In other words, there are no "obvious alternative explanation," as to why Defendants kept Alight as the Plan recordkeeper and AFA as the Plan managed account service provider given the excessive fees being paid to these service providers in comparison to what other plans were receiving for materially similar services. *Id.* at 629.

**Third**. Defendants claim that allegations concerning the lack of the competitive bidding cannot be part of a plausible breach of the duty of prudence claim. ECF No. 34, at 25 n. 11. But *Hughes II* states the exact opposite: "We reaffirm that a fiduciary need not constantly solicit quotes for recordkeeping services to comply with its duty of prudence. But fiduciaries who fail to monitor the reasonableness of plan fees and fail to take action to mitigate excessive fees—such as by adjusting fee arrangements, soliciting bids, consolidating recordkeepers,

---

[7] Inexplicably, Defendants cite to a number of E.D. Wis. decisions which involved granting motions to dismiss *without prejudice*, ECF No. 34, at 9, 13, 22, 23, and in which amended complaints have now been filed in each of those cases with the necessary allegations required under *Hughes II. See Glick v. ThedaCare, Inc.*, 2022 WL 16924188 (E.D. Wis. Nov. 14, 2022); *Guyes v. Nestle USA*, 2023 WL 22629 (E.D. Wis. Jan. 3, 2023); *Laabs v. Faith Techs., Inc.*, 2022 WL 17417583 (E.D. Wis. Dec. 5, 2022). None of these cases should be considered by the Court, as the court permitted amended complaints in all of them and those amended complaints are still under review by the courts.

negotiating for rebates with existing recordkeepers, or other means—may violate their duty of prudence." *Hughes II*, 63 F.4th at 625-626 (emphasis added). This is exactly what Plaintiffs have alleged in the FAC: Defendants have failed to take action to mitigate excessive fees by soliciting bids. ECF No. 28, ¶¶ 6, 14.

   **Fourth**. Defendants spill an inordinate amount of ink, making a number of misleading and legally inapt statements concerning the nature of the Plaintiffs' fee calculations. ECF No. 34, at 19-22. As just one representative example, Defendants claim that, "Plaintiffs . . . say nothing about the different type of fees paid to Alight and the comparators' recordkeepers." *Id.,* at 20, 22. In this regard, Defendants try to sow doubt and confusion by insisting that, "Plaintiffs elsewhere allege the Plan charged participants both plan-wide fees" and "additional fees based on the conduct of individual participants" for elective services like loan processing and brokerage accounts. *Id.* It appears that Defendants have missed the most essential allegations about fee comparisons from the FAC. First, "[i]n most cases, differences in fee rates for the A La Carte and Ad Hoc services are immaterial in determining the total fees charged by recordkeepers." ECF No. 28, ¶ 59. Second, "[r]etirement plan consultant and advisors primarily use the Bundled RKA fee rate of different recordkeepers to make fee rate comparisons and determine whether the Bundled RKA fee rate is reasonable." *Id.* So, the FAC *does* allege which fees matter when making recordkeeping fee comparisons. There are many other examples of Defendants trying to raise fact issues about Plaintiffs' calculations,[8] but to

---

[8] Another head-scratcher is Defendants allegation that Plaintiffs do not take into account "the entire amount of" indirect compensation in their recordkeeping allegations with regard to comparator plans. See ECF No. 34, at 21. Plaintiffs rely upon numbers reported to participants in annual plan fee disclosures. To the extent that participants pay indirect and direct compensation to the comparator plans, those amounts are reported in the annual participant disclosures under ERISA Section 404(a)(5), as alleged by Plaintiffs. ECF No. 28, ¶ 68. *Fritton*,

the extent that Defendants dispute Plaintiffs' calculations, a factual dispute exists that is not ripe for resolution on a motion to dismiss. *See Peck v. Munson Healthcare*, 2022 WL 17260807, at *5 (W.D. Mich. Nov. 9, 2022) ("Dismissing Plaintiff's recordkeeping fees claim based on a purely mathematical conclusion . . . is inappropriate at this early stage of this litigation."), and *Albert* itself does not "address the sufficiency of the calculations or the comparators for recordkeeping fees." *See Nohara v. Prevea Clinic, Inc.*, Case No. 20-cv-1079, ECF No. 73, Magistrate's Report and Recommendation, at 7 n.3 (Oct. 27, 2022).

Defendants also insist through their Memorandum of Law that, "Plaintiff continues to rely on comparing the Plan's fees to a random assortment of a few other plans that he says paid less." *See, e.g.*, ECF No. 34, at 13 n.3. Not only are Plaintiffs not required to compare the Plan's RKA fees to hundreds or thousands of other plans, but Plaintiffs have selected the proper plan comparisons based on the fact that, "[w]ith 86,195 participants in 2021, the Plan had more participants than 99.99% of the defined contribution Plans in the United States that filed 5500 forms for the 2021 Plan year. Similarly, with $9,869,704,841 in assets in 2021, the Plan had more assets than 99.99% of the defined contribution Plans in the United States that filed 5500 forms for the 2021 Plan year" ECF No. 28, ¶ 41, and the fact that, "[a]ll else being equal, the more participants a plan has, a recordkeeper will be able to provide a lower fee per participant to provide materially identical RKA services to maintain the same profit margin rate." *Id.*, ¶ 45. In short, the comparison of plans here is targeted to the essential aspect of the relative participant size of each of the plans and the relatively small number of such plans in

---

2022 WL 17584416, at *7, upon which Defendants rely, involves harder to decipher DOL 5500 forms, which are not utilized in this case.

question. Contrary to Defendants, Plaintiffs' comparator do not represent a "random assortment" of plans.

**Fifth.** Defendants erroneously contend that Plaintiffs' allegations in the Amended Complaint "boil[ ] down to conclusory allegations that 'costs are too high.'" ECF No. 34, at 8 A closer reading of the FAC, however, reveals that in no less than two separate places that rather than focusing on the "cheapest" or "average" alternative RKA or managed account fees, they are laser-focused on the reasonable alternatives available in the pertinent market, as required by precedent. ECF No. 28, ¶¶ 17, 93. Indeed, "the best way to determine the reasonable, as opposed to the cheapest or average, market price for a given quality and level of RKA services is to obtain competitive bids from other providers in the market.." *Id.*, ¶ 93.

\* \* \*

In all, under the context-specific pleading standard advanced by the Eighth Circuit in *Davis* and *Matousek*, and by the Seventh Circuit in *Hughes II*, Plaintiffs have plausibly alleged that Defendants violated their fiduciary duty of prudence under ERISA by incurring unreasonable recordkeeping and managed account services fees as compared to other similarly-situated plans. Taken as true, Plaintiff's allegations plausibly establish that Defendants breached their fiduciary duty of prudence under *Tibble*, applying the pleading standards discussed in *Twombly* and *Iqbal* by alleging enough facts to 'infer ... that the process was flawed" by which they selected recordkeeping and managed account services. *See Matousek*, 51 F.4th at 278 (citing *Davis*, 960 F.3d at 482–83.) As such, Defendants' motion to dismiss Plaintiffs' excessive RKA and managed account fee claims must be rejected.

## III.   PLAINTIFFS HAVE STATED CLAIMS FOR BREACH OF THE DUTY TO MONITOR

In addition to stating a claim for breaches of the fiduciary duty of prudence against Defendants, Plaintiffs have stated claims against U.S. Bank for failure to adequately monitor those responsible for administration of the Plan. ECF No. 28, ¶¶ 26, 83, 107, 227-240. Yet, because "Plaintiffs have plausibly pled that Defendants breached . . . their fiduciary duties, the same breach of the duty to monitor claims also survive. *See Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 805 (D. Minn. 2018) *(citing Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 915 (W.D. Mo. 2017)).

Moreover, "because the appropriate ERISA mandated monitoring procedures vary according to the nature of the Plan at issue and other facts and circumstances, an analysis of the precise contours of the defendants' duty to monitor at this stage is premature." *See In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 215 (D. Conn. 2007). Thus, Plaintiffs have plausibly alleged their duty to monitor claims, and Defendants' motion to dismiss should be rejected on this ground as well.

### <u>CONCLUSION</u>

For the above reasons, Defendants' motion to dismiss Plaintiffs' Amended Complaint should be denied in its entirety.

Respectfully submitted,

Date: May 23, 2023                WALCHESKE & LUZI, LLC

/s/ Paul M. Secunda
Paul M. Secunda
(admitted pro hac vice)
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372

psecunda@walcheskeluzi.com

MILLER & STEVENS, P.A.

Amy R. Mason, Esq. (#0347760)
92 Lake Street  S.
Forest Lake, MN 55025
Telephone: (651) 462-0206
amy@millerstevens.com

*Attorneys for Plaintiffs and Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 23, 2023, the foregoing Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint was filed via the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ Paul M. Secunda
Paul M. Secunda
