UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ANA L. DIONICIO and ALEJANDRO
M. WESAW, individually, and as a
representative of a Class of Participants
and Beneficiaries of the U.S. Bank 401(k)
Savings Plan,

      Plaintiffs,

v.

U.S. BANCORP, et al.,

      Defendants.

Case No. 23-cv-00026-PJS-JFD

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO CERTIFY ORDER FOR IMMEDIATE APPEAL**

---

**INTRODUCTION**

In the Eighth Circuit, interlocutory appeals are discouraged and should be authorized only sparingly and in extraordinary cases. *See Union Cty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008). This is not such an extraordinary case and is instead another attempt by Defendants' counsel to register their strong disagreement with the Court's motion to dismiss decision and to re-argue their motion. *See, e.g., Laliberte v. Quanta Services, Inc.*, Case No. 4:22-cv-03290, Dkt. 70 (S.D. Tex. May 21, 2024) (denying same defense counsel's motion to certify interlocutory appeal under materially similar circumstances); *Norton v. Mass. General Brigham Incorp.*, No. 1:22-cv-10045, ECF No. 82 (D. Mass. July 20, 2023) (same); *Monteiro v. The Children's Hosp. Corp.*, Case No. 1:22-cv-10069, ECF No. 66 (D. Mass. July 20, 2023) (same). All of these past attempts have failed and for good reason: these certification motions do not come

close to meeting the exacting standards for interlocutory appeals under 28 U.S.C. § 1292(b). Similarly, in this case, Defendants fail entirely to meet the relevant legal standards and thus, the Court should not certify for immediate appeal its March 21, 2024 order granting in part and denying in part Defendants' motion to dismiss. *See Dionicio v. U.S. Bancorp*, 2024 WL 1216519, at *1 (D. Minn. Mar. 21, 2024).

"[A] denial of a motion to dismiss for failure to state a claim is not a final appealable order." *See Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). Section 1292(b) authorizes a district court in *very limited circumstances* to certify for appeal an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion" if "an immediate appeal … may materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b)). In short, "Section 1292(b) establishes three criteria for certification: the district court must be of the opinion that (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation." *See White v. Nix,* 43 F.3d 374, 377 (8th Cir. 1994) (internal quotations omitted). Defendants entirely fail to establish that any of the prerequisites for issuance of a certificate under 28 U.S.C. § 1292(b) are met, let alone all of them—as is required to support the extraordinary relief they seek.

**First**. Defendants base their interlocutory appeal motion on the purported fact that *Matousek v. MidAm. Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022), "did not address one of the central issues in the Court's Order—whether allegations that all plans receive a 'commoditized and fungible' set of recordkeeping and administrative services satisfy *Matousek*'s requirement that plaintiffs plausibly allege that the comparator plans received the 'same services.'" EFC No. 72 at 6. This issue is simply not a central issue or a controlling question of law. The Court could not have

been clearer in its Order that Plaintiffs' ERISA fiduciary breach of prudence claims were plausible not only because of "commodification" arguments, but "because *Matousek* strongly suggests that a comparison of payments made for 'basic recordkeeping services' (as disclosed by § 404(a)(5) forms) by two similarly-sized plans could provide the basis of a plausible claim for relief." *See Dionicio*, 2024 WL 1216519, at *4. This point is brought home by the Court remarking that "Plaintiffs make just such a comparison, *bolstered by additional allegations* regarding the fungibility and commodification of RKA services." *Id.* (emphasis added). In other words, the commodification argument is neither central nor controlling, but instead amounts to "additional allegations" that bolster the Court's decision to deny Defendants' motion to dismiss.

**Second.** There is not a "substantial ground for difference of opinion." The actual issue is Defendants' dispute with the Court's application of settled ERISA pleading law to the particular facts of this case. Since the fiduciary breach pleading standard is well-settled under *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022), Defendants do not actually identify any "difference of opinion," much less a "substantial ground" for that difference. As will be discussed below, all of the authorities that Defendants cite agree with the context-specific framework set forth in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014), which *Hughes* reiterated.

**Third.** Nor would an immediate appeal materially advance the ultimate termination of this action. Even if the Eighth Circuit differed from this Court's conclusions on the factual sufficiency of the Amended Complaint, Plaintiffs would request, and should be granted, leave to address any shortcomings, so the action would not be terminated or materially advanced. This outcome, of course, presupposes that the Eighth Circuit would embrace the bright line pleading requirements urged by Defendants in contravention of the Supreme Court's admonitions in *Hughes*, 142 S. Ct.

at 742, that ERISA breach-of-duty claims require a "context-specific inquiry" that looks to "the allegations as a whole."

For all these reasons, the Court should deny Defendants' motion to certify its order for immediate appeal.

## BACKGROUND

Plaintiffs, who are former participants in the Plan, a defined contribution retirement plan, initiated this action individually and as representatives of a class of similarly situated persons, on behalf of the Plan, and filed their complaint on January 5, 2023. ECF No. 1. Plaintiffs filed an amended complaint on April 4, 2023. ECF No. 28. In pertinent part, Plaintiffs allege in their amended complaint that Defendants, as fiduciaries of the Plan, incurred unreasonable Bundled recordkeeping and administrative ("RKA") fees and failed to monitor those members of its Benefits Administration and Investment Committees responsible for paying reasonable Bundled RKA fees. *Id.*, ¶¶ 6, 8. Accordingly, Plaintiffs assert fiduciary breach of prudence claims (id., ¶¶ 153–163) (Counts I), and failure to monitor fiduciaries claims (*id*.,¶¶ 174–180) (Count II), against Defendants.

Defendants moved to dismiss on May 2, 2023, for failure to state a claim. ECF Nos. 33-37. Plaintiffs filing their opposition on May 23, 2023, ECF No. 40, and Defendants filing their reply on June 6, 2023. ECF Nos. 41-41. In the ensuing months, Defendants and Plaintiffs both filed various notices of supplemental authority for the Court's consideration. ECF Nos. 43-49, 51, 55-56, 58-59, 61-63, and the Court held an in-person hearing on the motion on September 15, 2023. ECF No. 52.

On March 21, 2023, the Court issued its order granting in part and denying in part Defendants' motion to dismiss. ECF No. 64. Although the Court dismissed the Plaintiffs' managed account claims, the Court evaluated each of Plaintiffs' factual allegations supporting Plaintiffs' breach of fiduciary duty claims involving RKA fees, and Defendants' counter-arguments to those claims, including, among other things: (1) that recordkeepers "bundle" standard RKA services into a single package that will meet the needs of any mega plan, regardless of which particular services within the package an individual mega plan chooses to use. ECF No. 28, ¶¶ 43, 47; (2) that the Plan paid an average price-per-participant of $29 per year for the services of that recordkeeper. *Id.*, ¶ 98; (3) that those prices were 52% higher than fees paid by comparable defined-contribution plans, which fees averaged $19 per year for each participant. *Id.* ¶¶ 99, 105–06; (4) that the fact that the Plan so badly overpaid for RKA services means that defendants did not use a reasonable process in selecting a recordkeeper, in breach of their duty of prudence. *Id.*, ¶¶ 119, 160; and (5) that U.S. Bank and its Board breached their fiduciary duties by failing to monitor the Committees responsible for overseeing fees for the Plan's RKA services. *Id.*, ¶ 8. The Court held that "[P]laintiffs have adequately pleaded that defendants breached their duty of prudence by allowing the Plan to incur excessive fees for RKA services." *Dionicio*, 2024 WL 1216519, at *5.

## ARGUMENT

### A.     STANDARD OF REVIEW

Under 28 U.S.C. § 1292(b), three criteria must be met before an order may be certified for appeal: (1) the question involves a controlling issue of law; (2) as to which there is a substantial ground for a difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. 1292(b).

With regard to Section 1292(b) interlocutory appeals, "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *See Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 868 (1994) (citation omitted). More specifically, the Eighth Circuit has observed that "[i]t has ... long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants. Permission to allow interlocutory appeals should thus be granted sparingly and with discrimination." *See White v. Nix,* 43 F.3d at 376 (*quoting Control Data Corp. v. Int'l Bus. Machines Corp.,* 421 F.2d 323, 325 (8th Cir.1970)); *see also United States Rubber Co. v. Wright,* 359 F.2d 784, 785 (9th Cir.1966) (per curiam) ("The legislative history of subsection (b) of section 1292 ... indicates that it was to be used only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation. It was not intended merely to provide review of difficult rulings in hard cases."). In requesting that this court follow the extraordinary course of interlocutory review of this matter, Defendants "bear[ ] the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *See White,* 43 F.3d at 376.

Certification under Section 1292(b) is within the Court's discretion. *See Indus. Wire Prods., Inc. v. Costco Wholesale Corp.*, 576 F.3d 516, 519 n.2 (8th Cir. 2009). For certification to be appropriate, each of the three criteria must be satisfied and each criterion requires a separate inquiry. *See Quality Office Furnishings, Inc. v. Allsteel, Inc.*, 2018 WL 7077066, at *10 (S.D. Iowa Dec. 18, 2018).

As discussed below, Defendants have not satisfied the three-prong criteria for certification under 28 U.S.C. § 1292(b), nor is this an "exceptional" case that warrants the Court's exercise of its discretion even if Defendants did meet each of the three-prong criteria. This "dispute between

the parties is not a dispute about the applicable legal standards; instead, it is a prosaic dispute about whether the plaintiffs have" plausibly pled that defendants breached their duty of prudence by allowing the Plan to incur excessive fees for RKA services. *See Bennett v. Int'l Paper Co.*, 2009 WL 1955216, at *2 (D. Minn. July 6, 2009). Indeed, "[t]his is plainly not the kind of question appropriate for § 1292(b) certification. If it were, interlocutory appeals, instead of being "extraordinary," would be appropriate in the vast majority of cases in which a court denies [a motion to dismiss]." *Id.*

### B. Defendants Do Not Raise A Controlling Question Of Law

A controlling question of law is a legal question and not "a matter of the discretion of the trial court." *See White,* 43 F.3d at 377. "[A] question of law is 'controlling' if reversal of the district court's order would terminate the action." *See Schwendimann v. Arkwright Advanced Coating, Inc.*, 2012 WL 5389674, at *3 (D. Minn. Nov. 2, 2012).

Defendants argue that a "controlling question of law" exists for purposes of interlocutory appeal: "whether allegations that all plans receive a 'commoditized and fungible' set of record-keeping and administrative services satisfy Matousek's requirement that plaintiffs plausibly allege that the comparator plans received the 'same services.'" ECF No. 72 at 6. Defendants continue that "[i]f the Eighth Circuit determines that *Matousek* is not satisfied by allegations that all record-keepers provide a 'commoditized and fungible' set of services with no impact on price, then Plaintiffs' recordkeeping claims will be dismissed and the litigation will terminate." *Id.* at 6-7.

Defendants' reasoning is fallacious for at least four reasons. First, the Court based its motion to dismiss Order on the fact that "plans need not be numerically identical to be similarly sized, as 'there is no one-size-fits-all approach' for determining whether a particular plan provides a meaningful benchmark. *Id.* (*citing Matousek*, 51 F.4th at 280–81). Consequently, because "all of

plaintiffs' comparator plans have more than $5 billion in assets and at least 46,000 participants, *[i]d.* ¶ 99," unlike the plaintiffs in *Matousek* and [*Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022)], "plaintiffs in this case have not offered as comparators plans that have little in common with the defendant plan, but rather have provided relatively close matches given the Plan's exceptional size." *Dionicio*, 2024 WL 1216519, at *3. Thus, completely separate and apart from any "commodification" arguments, the Court concluded that "comparing the Plan with the mega plans identified by plaintiffs is a 'like-for-like comparison' that provides a 'meaningful benchmark' for assessing the Plan's recordkeeping fees." *Id.* (*citing Matousek*, 51 F.4th at 279).

Second, the Court also found that "unlike in *Matousek*, plaintiffs do not mention the total compensation paid to the Plan's recordkeeper or cite Form 5500. Instead, plaintiffs rely solely on the § 404(a)(5) participant-disclosure forms to calculate the costs of RKA services for both the Plan and the comparator plans." *Dionicio*, 2024 WL 1216519, at *4. As such, Defendants' "reliance on Matousek is doubly misplaced because Matousek strongly suggests that a comparison of payments made for 'basic recordkeeping services' (as disclosed by § 404(a)(5) forms) by two similarly-sized plans could provide the basis of a plausible claim for relief." *See id.*

Third, although it is true that the Court does state that Plaintiffs' RKA allegations in this case are "*bolstered by additional allegations* regarding the fungibility and commodification of RKA services," *id.* at 4 (emphasis added), this line of reasoning is neither central nor controlling, but just complementary to the two other grounds discussed above. In other words, the Court found that Plaintiffs' ERISA fiduciary breach of prudence claims were plausible not just because of Plaintiffs' commodification arguments, but because "Defendants' [motion to dismiss] arguments [were] unavailing for a number of reasons." *Dionicio*, 2024 WL 1216519, at *3. So, the Defendants are incorrect that "if the Eighth Circuit concludes that Plaintiffs' 'fungibility' allegations do not

suffice to state a plausible claim, the litigation will end," ECF No. 72 at 10, as there are multiple other allegations upon which the Court independently relied upon to deny Defendants' motion to dismiss.

Fourth, and finally, Defendants cannot meet the first prong because Defendants' true issue is with the Court's application of the pleading standard to the particular facts of this case. Yet, the United States Supreme Court has explained that ERISA breach-of-duty claims require a "context-specific inquiry" that looks to "the allegations as a whole." *Hughes*, 142 S. Ct. at 740, 742. The Supreme Court instructed courts to "consider whether petitioners have plausibly alleged a violation of the duty of prudence as articulated in [*Tibble v. Edison Int'l*, 575 U.S. 523 (2015)], applying the pleading standard discussed in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] and [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)]," noting that "the appropriate inquiry will necessarily be context specific" because "the content of the duty of prudence turns on 'the circumstances. . . prevailing' at the time the fiduciary acts." *Hughes*, 142 S. Ct. at 742 (*citing Dudenhoeffer*, 573 U.S. at 425 (2014).

That is precisely what the Court did here. It engaged in a "careful, context-specific scrutiny of a complaint's allegations." *See Dudenhoeffer*, 573 U.S. at 425. None of the cases cited by Defendants in their brief create bright-line rules regarding the pleading standard in ERISA breach-of-duty cases. EFC No. 72 at 12. Any difference in outcomes is easily explained by the particular facts pleaded in particular complaints—not by a difference in the applicable pleading standard. This is an insufficient basis for certifying interlocutory appeal. *See White,* 43 F.3d at 377 ("A controlling question of law is a legal question and not "a matter of the discretion of the trial court.").

For all of these reasons, Defendants cannot meet the first prong of the interlocutory certification test and Defendants' motion should be denied on this basis alone.

### C. Substantial Grounds For Difference in Opinion Does Not Exist

Not only is there not a controlling issue of law, but there also does not exist a substantial ground for a difference of opinion on the pleading standard in these types of ERISA excessive fee cases. Substantial grounds exist when: "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is one of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *See Graham v. Hubbs Mach. & Mfg., Inc.*, 49 F. Supp. 3d 600, 612 (E.D. Mo. 2014). On the other hand, a party's strong disagreement with the court's ruling is not sufficient for there to be a substantial ground for difference. *See Karg v. Transamerica Corp.*, 2019 WL 9093998, at *8 (N.D. Iowa Nov. 7, 2019).

The pleading standard in ERISA breach of fiduciary case does not involve any of these "substantial ground" scenarios, as the appropriate pleading standard in these cases has been well-settled at least since the United States Supreme Court decided *Hughes*, 137 S. Ct. at 742. In other words, the legal issue at issue is *not* whether fungibility and commodification arguments are part of the ERISA pleading standard for breaches of fiduciary duty, but the Court's application of the established pleading standard to the particular facts of this case including the allegation that the RKA services here were commodified and fungible. The "context-specific inquiry" that the Court undertook looked to "the allegations as a whole," *Hughes*, 142 S. Ct. at 740, and made clear that the Plaintiffs' allegations were "similar to the allegations addressed in [*Hughes v. Northwestern Univ.*, 63 F.4th 615, 632 (7th Cir. 2023) ("*Hughes II*")] and in other cases that have allowed claims of excessive recordkeeping fees to survive motions to dismiss." *See Dionicio*, 2024 WL 1216519, at *5.

There is simply no dispute regarding the fact the Court applied the appropriate *legal* pleading standard*,* as established recently by the United States Supreme Court, to the facts of this case. Defendants just take issue with the weight the Court assigned the allegations in the Amended Complaint, i.e., the Court's application of the pleading standard to commodification and fungibility allegations, which, at most, constitutes one among many other grounds for denying Defendants' motion to dismiss. *Accord Johnson v. Watts Regul. Co.*, 1994 WL 421112, at *2 (D.N.H. Aug. 11, 1994) ("While the defendants claim there is a substantial ground for difference of opinion concerning a controlling question of law and cite various cases, the real difference of opinion is between the defendants' and the court's application of the law to the particular facts of this case.").

In sum, Defendants' purported "substantial difference of opinion" (ECF No. 72 at 7, 11-16), is simply the foreseeable result of the application of a uniform pleading standard to different factual scenarios, rather than a conflict involving the applicable legal standard. As such, there is not substantially differing views regarding the *legal* issue before the Court and Defendants have failed to make out the second prong of the certification test.

### D. Interlocutory Appeal Will Not Materially Advance the Ultimate Termination of the Litigation

Nor would an interlocutory appeal materially advance the ultimate termination of the litigation, as Defendants' assert. "When litigation will be conducted in substantially the same manner regardless of [the Eighth Circuit's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *See White,* 43 F.3d at 378–79.

As an initial matter, Defendants' motion does not advance the ultimate termination of this litigation because as the Supreme Court has explained, ERISA breach-of-duty claims require a "context-specific inquiry" that looks to "the allegations as a whole." *See Hughes*, 142 S. Ct. at 742. So, even if the Eighth Circuit adopts the analysis championed by Defendants, the Plaintiffs' claims

here would be distinguishable because the additional allegations made by the Plaintiffs beyond commodification and fungibility arguments independently support the plausibility of their fiduciary claims regarding excessive RKA fees in this case.

Second, because the "question" that Defendants raise is not "controlling," as discussed above, a reversal of the Court's Order would not "terminate the litigation." ECF No. 72 at 16. Even under the highly unlikely scenario that the Order is reversed, Plaintiffs would be provided leave to amend the Amended Complaint to address any ostensible factual deficiencies. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Under such circumstances, the litigation would not terminate, as a subsequent round of briefing on another motion to dismiss a newly-amended complaint would be the most likely outcome.

Third, and finally, granting an immediate appeal would therefore have the opposite effect as far as "materially advance[ing] the ultimate termination of this litigation" because "granting Defendants' request to certify an interlocutory appeal . . . on this ground would unnecessarily delay the ultimate resolution of this litigation and result in unwarranted piecemeal litigation and appeals." *See Kimberly-Clark Corp. v. Seidner*, Case No. 3:21-cv-867-L, ECF No. 80 (N.D. Tex. Jan 23, 2024) (denying motion to certify interlocutory appeal in materially similar ERISA matter).

The third condition for interlocutory review has therefore also not been met by Defendants.

## **CONCLUSION**

Because no basis exists to certify the Court's motion to dismiss for interlocutory review based on the three factors set out under Section 1292(b), nor is this an exceptional case in which the Court should exercise its discretion to allow an immediate appeal, the Court should deny Defendants' motion to certify the Court's motion to dismiss order for interlocutory review.

Dated this 30th day of May, 2024         Respectfully submitted,

        **WALCHESKE & LUZI, LLC**

        <u>**s/ *Paul M. Secunda***</u>
        Paul M. Secunda (admitted pro hac vice)
        235 N. Executive Dr., Suite 240
        Brookfield, Wisconsin 53005
        Telephone: (414) 828-2372
        psecunda@walcheskeluzi.com

        **CUMMINS & BONESTROO**

        Amy R. Mason, Esq. (#0347760)
        363 5th Avenue North
        200 Professional Bldg.
        Bayport, MN 55003
        612-306-3808
        Email: amason@cblawoffices.com

        *Attorneys for Plaintiffs and Proposed Class*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically via the Court's ECF system in accordance with Local Civil Rule 5.1 on May 30, 2024. Accordingly, this document was served on each party who is a registered user of ECF.

*/s/ Paul M. Secunda*
Paul M. Secunda
