## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Ana L. Dionicio, and Alejandro M. Wesaw, individually and as representatives of a class of participants and beneficiaries of the U.S. Bank 401(k) Savings Plan, | No. 23-cv-26 (PJS/DLM) |
| Plaintiffs, | **ESI PROTOCOL ORDER** |
| v. | |
| U.S. Bancorp, Board of Directors of U.S. Bancorp, U.S. Bancorp's Benefits Administration Committee, and U.S. Bancorp's Investment Committee, | |
| Defendants. | |

---

Upon consideration of the parties' Stipulation Regarding Discovery of Electronically Stored Information (Doc. 82),

**IT IS HEREBY ORDERED THAT:**

The following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action.

## I.     General

A.     The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

B.      The terms of this Stipulation shall be construed to ensure the exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

C.      Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation.  In the event of transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement.  This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.  Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to a binding Protective Order ("Protective Order"), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable.  Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain ESI or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the document's production.

D.      The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation.  To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer to resolve the issue.

E.      Consistent with their obligations under applicable Federal Rules of Civil Procedure and Local Rule 7.1(a)(1), the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

## II.      Production Format – Hardcopy

Hardcopy documents should be scanned as a PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should, at minimum, contain the following fields: "BEGBATES," "ENDBATES," "BEGBATESATTACH," "ENDBATESATTACH," "PAGES" and "CUSTODIAN." The Parties should produce additional fields that are readily available but shall not be required to incur costs to perform objective coding or other manual creation of fields not present in the original documents. The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color

necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

### III.      Production Format – ESI

The following section governs the production of electronically stored information, unless expressly provided for in another section of this Stipulation, the Parties agree in advance and in writing, or if this Stipulation is modified by the Court.

A.      <u>File Types and Formats</u>. All spreadsheet (*e.g.*, Microsoft Excel, Corel Quatrro, etc.) files shall be produced as native files with TIFF placeholder images. Except as otherwise stated herein, all unredacted presentations (*e.g.*, Microsoft PowerPoint, Google Slides, etc.), audio (*e.g.*, .mp3, .mp4, .wav, etc.), and video (*e.g.*, .wvm, .m4v, etc.), shall be produced as native files with TIFF placeholder images, but must be produced so that comments and tracked changes, if any, are visible. Emails shall be produced as TIFFs. The Parties will meet and confer on the production of other file types, such as CAD drawings, structured databases (*see* VI below). In advance of depositions, the Parties reserve the right to produce TIFF versions of any previously produced native files at their discretion.

B.      <u>TIFF Images</u>: ESI should be produced as single-page, Group IV, 300 DPI TIFF images except for those documents detailed in Section III(A).  Any document

produced as TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each .tiff file should be assigned a unique name matching the Bates number of the corresponding image. Bates numbers and confidentiality designations, if applicable, should be electronically branded on each produced .tiff image. These TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents, which contain redactions, should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image.  Color originals may be produced in B&W TIFF format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original, however categorical or wholesale requests are deemed invalid.

C.    Parent-Child Relationships. Unless otherwise addressed in this Stipulation, for email families, the parent-child relationships (the association between emails and attachments) should be preserved. Email attachments should be consecutively produced with parent email record.

D.    Load File Formats and Metadata to Be Produced: All ESI should be produced with a delimited, database load file (i.e., .dat) that contains the metadata fields

listed in Appendix 1, attached hereto, to the extent captured at the time of the collection. The database load file shall be provided with UTF-8 encoding. To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced, or would be overly burdensome to provide, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data. An .opt image cross-reference file should also be provided for all TIFF images.

E.   Native Files: If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that it is available, the original document text shall be provided in a document level multi-page UTF-8 with BOM text file with a text path provided in the .dat file; otherwise text contained on the slipsheet shall be provided in the .txt file with the text path provided in the.dat file. Native files will be produced in a separate folder for the production.

If documents requested in native format require redactions, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent

records do not easily conform to native or TIFF format (*i.e.*, structured data), the Parties should meet and confer in good faith.

      F.    <u>Extracted Text and OCR</u>. Each document, whether produced in Native or TIFF format, and whether originally existing in electronic or in hard copy (*see* Section II *supra*), shall be produced with extracted text or OCR, as described herein.

      1.    <u>Extracted Text (Emails, Unredacted Native ESI, and Redacted Spreadsheets)</u>. All email, un-redacted ESI, and redacted spreadsheets produced as native files should be provided with complete document-level extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments. Text must be extracted in its intended order (for example, text from PDFs with two columns should be extracted from the first column before moving on the second column, rather than extracting text from the top line across both columns, etc.).

      2.    <u>Format of Extracted Text and OCR</u>. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 with BOM

encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

G.     Limited Informal Electronic Collection. Defendants may collect and produce certain categories of documents utilizing informal collection methods even though such collection method may alter certain aspects of those files' metadata as they exist at the time of collection (e.g., created date, file path).  To the extent that Plaintiffs believe that the metadata related to any such document is relevant to this Action, the Parties agree to meet and confer to discuss an efficient means of providing the necessary information to Plaintiffs.

## IV.     Previously Collected and Produced Data

The Parties agree that this Stipulation does not create an obligation to recollect or reproduce any prior collections or productions collected or produced prior to the entry of this ESI Stipulation.  This includes not requiring either Party to reproduce productions in the production format outlined in this ESI Stipulation.

## V.     Production – Handling Completely Non-Responsive Documents Attached to Production-Eligible Documents

In an effort to avoid unnecessary expense and burden, the Parties agree that completely non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet containing the text stating the document has been withheld as non-responsive.  For all attachments withheld as non-responsive, the Producing Party agrees to produce as part of the metadata load files the ESI metadata listed in Appendix A (with the exception of

text).  When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

## VI.    Production – Receipt and Storage of Protected Material

The recipient of any Protected Material that is provided under this Stipulation shall maintain such information in a reasonably secure and safe manner that ensures access is limited to the persons authorized herein, and shall further exercise the same standard of due and proper care with respect to the storage, custody, use, and/or dissemination of such information as the recipient would use with respect to its own proprietary information.

If the recipient discovers any loss of Protected Material or a breach of security, including any actual or suspected unauthorized access, relating to the produced Protected Material, the Receiving Party shall:

A.      Promptly provide written notice to Producing Party of such breach within a reasonable time of the breach discovery.

B.      Investigate and make reasonable efforts to remediate the effects of the breach and provide Producing Party with assurances that safeguards are being implemented to ensure another breach does not occur.

C.      Provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach. The Requesting Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

D.     The Requesting Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access and/or correct the breach.

## VII.   Production Format - Structured Data

If a Party is producing electronic information from a database that cannot be provided in a readily accessible production format (e.g., as an Excel file), the Parties will meet and confer in advance of that production to discuss the most appropriate and cost-effective production format, which may include an export of data. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format. If the Parties cannot reach agreement, the Parties may refer the matter to the Court or its designee.

## VIII.  Production Format – Social Media

If a Party is producing electronic information from social media websites (e.g., LinkedIn, Facebook, Twitter), the Parties will meet and confer in advance of that production to discuss the most appropriate and cost-effective production format.

## IX.   Production Format - Media

Documents shall be exchanged on secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.

## X.    Processing and Other Specifications

A.     <u>Bates Numbering and Confidentiality Designations</u>: Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix

along with a fixed number, e.g., ABC00000001, electronically "burned" onto the image at the bottom of the page so as not to unreasonably obscure any information from the source document. Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

B.    ESI Date and Time Processing: Each Party's ESI should be processed using a consistent Time Zone for all data. The Party shall share the Time Zone selected for processing of its data with the other Party.

C.    Global or Horizontal Deduplication:  Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Stipulation.

D.    To the extent a Party identifies identical documents where the hash values do not match as a result of technical issues due to emails being stored in and collected

from two email environments, the Producing Party can use near duplicate analysis to remove documents with 100% textual matches.

E.     Email Thread Suppression:  Each Party may deduplicate e-mails in such a way as to eliminate earlier or incomplete chains of e-mails, and produce the email (as TIFF or as otherwise required) that contains the most complete iteration of an e-mail chain — i.e., the produced email contains all previous replies, forwards, and the original message and all attachments in the whole email family. A Party may, therefore, not eliminate earlier emails that have attachments not attached to the last email in a chain. However, a Party may not create a new thread by combining related emails if such emails are not contained in one already existing email.

F.     Embedded Objects:  Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable and when possible, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Stipulation.

G.     Compressed Files:  Compressed file types (e.g., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

H.     Redactions:  As described in more detail below, the Producing Party can redact non-public personally identifiable information and material that is claimed to be

privileged. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made. If the issue cannot be resolved, the Parties may seek resolution from the Court.

I.      No Designation of Discovery Requests:  Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include any reference to the requests to which a document or ESI may be responsive.

J.      Foreign Language Documents: To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language document and ESI in the original language. Documents containing foreign language text must be OCR'd using the appropriate settings for that language (e.g., OCR of German documents must use settings that properly capture umlauts and OCR of Asian language documents must properly capture the relevant Asian characters). The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

**XI.    Identification and Collection of Documents**

A.      In certain circumstances, it may be necessary for a Party to apply search terms to custodial ESI in order to identify potentially responsive documents.  In such circumstances, except as otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

1.      List of records custodians;

       2.     Search methodology to be applied, including, but not limited to, search terms and date restrictions;

       3.     Location of relevant data sources including custodial and non-custodial; and

       4.     Applicable timeframe for production of documents.

B.     The producing party must make reasonable efforts to select and/or propose custodians who likely possess information and documents responsive to the respective discovery demands.

C.     <u>Search Methodology:</u>

       1.     <u>Email and Non-Email</u>: The Parties agree to search for and produce unique, responsive records from sources of hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the Producing Party.

       2.     The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

**XII.  Preservation**

A.     The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

B.     The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of the following sources of ESI because they are either not reasonably accessible or not likely to contain additional relevant information from other sources whereby the associated burden and costs outweigh any benefit:

1.     Data duplicated in any electronic backup system.

2.     Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives.

3.     Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

4.     On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

5.     Data stored on photocopiers, scanners and fax machines.

6.     Data in metadata fields that are frequently updated automatically, such as last-opened dates.

7.     Server, system or network logs.

8.     Legacy data or data remaining from systems no longer in use that is unintelligible on the systems in use to the extent such data is duplicative of data on systems in use.

9.     Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments.

10.     Data stored on mobile devices (excluding laptop and notebook computers) and tablets.

This section should not be interpreted as limiting a Producing Party's ability to identify ESI not listed above as being not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(A).

## XIII.  Privilege and Privilege Logs

A.     The Parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications to or from outside legal counsel for Defendants; (b) communications from inside counsel, (c) communications to inside counsel where inside counsel is the only recipient or is related to this litigation, (d) work product of counsel and parties, (e) any internal communications within a law firm, (f) any communications regarding litigation holds or preservation, collection, or review in this or any Litigation, and (g) any communication or document that post-date the filing of the complaint.

B.     The Parties agree that redacted documents do not need to be included on the privilege log.

C.     In an effort to avoid unnecessary expense and burden associated with traditional "document by document" privilege logs, the Parties agree that for documents withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will prepare a summary log containing for each document (except those exempted above) claimed as privileged, an export of all or a subset of the metadata fields listed below (as agreed upon by the

Parties) to the extent such information exists and has not been suppressed or redacted for privilege.  The export should include, at a minimum, the following information from the top line email:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- NUMBER_OF_ATTACHMENTS
- CUSTODIAN(S)
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- FILEXT
- DOCTYPE
- AUTHOR
- CREATEDDATE
- HASH (MD5 OR SHA-1)
- REDACTED
- PRIVILEGED PERSON (only provided if not already identified in other metadata fields)
- PRIV_TYPE (e.g., Attorney-Client; Attorney Work Product)

D.     The Parties further agree that this summary log satisfies the Producing Party's obligations under Federal Rule of Civil Procedure 26(b)(5).

E.     If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information.  Within thirty (30) days of such a request, the Producing Party must either (i) provide the requested information or

(ii) challenge the request.  If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

F.     The Parties shall enter into a separate agreement with respect to the logging of hard-copy privileged documents, to the extent such documents exist.

G.     Alternatively, or in conjunction with the privilege log protocol herein, the Producing Party may prepare and identify withheld documents by category through a categorical log.  The categorical log will provide the following fields:

- PARENT/MASTER DATE
- DOCTYPE
- SENDER (FROM/AUTHOR)
- RECIPIENTS (TO, CC, BCC)
- PRIV_DESCRIPTION (e.g., the category)
- PRIV_TYPE (e.g., Attorney-Client; Attorney Work Product)
- DOCS_WITHHELD
- DOCS_WITHHELD_FAMILY-COMPLETE

## XIV.  Third Party Documents

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein.  The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party.  Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

## XV.   Good Faith

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation.  If a Producing Party cannot comply with any material aspect of this Stipulation, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within fourteen (14) calendar days after so learning.  No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

## XVI.  No Effect on Discovery or Admissibility

This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege that may be applicable.  Nothing in this Stipulation shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

## XVII. Costs and Burden

All Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances.

## XVIII.      Authenticity

A document produced in this litigation, with the exception of extracted text files, shall be presumed to be authentic if offered as evidence against the Party that produced it unless the Party (a) gave notice at the time of production that the authenticity of the document may be challenged, including the reasons for such a challenge; or (b) shows good cause for its failure to give such notice at the time of production.

When documents produced in accordance with this Stipulation are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents shall be the copy used.  This paragraph does not apply to any Federal Rule of Evidence 1006 summary exhibits or summary demonstratives.

## XIX.  Protective Order

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Protective Order.

## XX.  Modification

This Stipulation may be modified by (a) a Stipulated Order of the Parties or (b) an Order of the Court for good cause shown.


DATED: August 2, 2024                    *s/Douglas L. Micko*_____
                                         DOUGLAS L. MICKO
                                         United States Magistrate Judge

## APPENDIX 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGBATESATTACH | ABC00000001 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDBATESATTACH | ABC00000008 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document. |
| DESIGNATION | Confidential | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced TIFFs. If the document is only provided in native, this field would be populated with the designation the native file should have if printed. |
| REDACTED | Yes | Please populate this field for all documents that have a redaction. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |

| CREATEDDATE | MM/DD/YYYY | The date the document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location). |
|---|---|---|
| CREATETIME | HH:MM | The time the document was created.<br><br>*Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location). |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| TIMEZONE PROCESSED | PST, CST, EST, etc. | The time zone the document was processed in. |
| AUTHOR | jsmith | The author of a document from extracted metadata.<br><br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |

| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
|---|---|---|
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| DOCTITLE | | The extracted document title of a document. |
| IMPORTANCE | 0 or 1 or 2 | E-mail Importance Flag (0 = Normal, 1 = Low Importance, 2 = High Importance) |
| CUSTODIAN | John Smith | The custodian/source of a document. |
| ALLCUSTODIANS | John Smith; Tim Jones; Finance Department | Identifies all custodians who owned a copy of this document prior to deduplication. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |
| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a document. |

| EMAIL CONVERSATION INDEX | | ID used to tie together e-mail threads. |
|---|---|---|
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding bates numbers.

If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for their own benefit). |

** As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such. But the load files and fields produced must be consistent across productions.

** Same is true with all DATE and TIME Fields.  These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file. But the load files and fields produced must be consistent across productions